UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>RUSTAM YUSUPOV,<br><br>Defendant. | NO. MJ22-137<br><br>COMPLAINT FOR VIOLATIONS<br>18 U.S.C. § 922(g)(8) |

BEFORE, Paula L. McCandlis, United States Magistrate Judge, Seattle, Washington.

## COUNT 1

**(Unlawful Possession of a Firearm)**

**(Hotel room)**

On or about March 10, 2022, in King County, within the Western District of Washington, RUSTAM YUSUPOV, knowing he was subject to a court order meeting the requirements of Title 18, United States Code, Section 922(g)(8)(A)-(C), that is, the Order For Protection issued on March 16, 2020, and renewed on May 13, 2021, in the matter of *Yasmeen Judeh vs. Rustam Yusupov*, in King County Superior Court case number 20-2-02283-7, did knowingly possess, in and affecting interstate and foreign commerce, firearms, to wit: a Polymer80 9mm caliber pistol with no serial number; and a North

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 1

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

American Arms Corp. Derringer .22 revolver, which had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(8).

## COUNT 2

### (Unlawful Possession of a Firearm)

### (Vehicle)

On or about March 10, 2022, in King County, within the Western District of Washington, RUSTAM YUSUPOV, knowing he was subject to a court order meeting the requirements of Title 18, United States Code, Section 922(g)(8)(A)-(C), that is, the Order For Protection issued on March 16, 2020, and renewed on May 13, 2021, in the matter of *Yasmeen Judeh vs. Rustam Yusupov*, in King County Superior Court case number 20-2-02283-7, did knowingly possess, in and affecting interstate and foreign commerce, firearms, to wit: a Polymer80 9mm caliber pistol with no serial number and a skeletonized AR-15 5.56 NATO caliber pistol with no serial number; and

- FMK Firearms Model AR-1 Extreme 5.56 NATO caliber rifle;
- Aero Precision Model X15 5.56 NATO caliber rifle;
- Ruger Model 5.7 5.7x28mm caliber pistol;
- Ruger Model 18029 Precision 6.5mm Creedmoor/.308 Winchester caliber rifle; and
- Kel-Tec Model Sub 2000 9x19mm caliber rifle;

all of which had been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(8).

This complaint is to be presented by reliable electronic means pursuant to Federal Rules of Criminal Procedure 4.1 and 41(d)(3).

The undersigned complainant, Catherine Cole, being duly sworn, further deposes and states as follows:

//

//

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 2

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# INTRODUCTION

I am a Special Agent (SA) with the United States Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since 2013. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516. I am currently assigned to the Seattle Group V Field Office where I am further assigned to the Puget Sound Regional Crime Gun Task Force (PSRCGTF).

I am a graduate of the Federal Law Enforcement Training Center, Criminal Investigator Training Program, and the ATF National Academy, both in Glynco, Georgia. During this 27-week training, I received instruction relating to the investigation of firearm and explosives violations. Following this training, I received one year of on-the-job training in the field. Prior to this employment, I obtained bachelors' degrees in Political Science with a concentration on international relations and French from Tulane University in New Orleans, Louisiana, and a master's degree in Natural Resources Law Studies from the University of Denver College of Law in Denver, Colorado. During my career with ATF, I have had training and experience investigating violent crimes against persons and crimes against the government. I have been involved in numerous investigations involving the unlawful purchase and/or unlawful possession of firearms and explosives. I have also participated in and executed search and seizure warrants with respect to the illegal possession of firearms and explosives.

This affidavit is made based upon my personal knowledge, training, experience, and investigation, as well as upon information provided to me and my review of reports prepared by other law enforcement personnel. This affidavit is made for the purpose of establishing probable cause for this Complaint and thus does not include every fact known to me concerning this investigation.

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# SUMMARY OF PROBABLE CAUSE

### A. SPD Officers Respond to a Crisis Call at the Westin Hotel.

On March 10, 2022, at 1:16 a.m., Seattle Police Department (SPD) officers responded to the Westin Hotel, located at 1900 5th Avenue in Seattle. The officers were responding to a crisis call placed by the hotel's manager, M.H., concerning one of the guests at the hotel (later identified as Rustam Yusupov). The 911 dispatch for the call informed the officers: "MALE IN CRISIS TEARING UP ROOM, REQ MANAGER TO CALL FOR OFCS, NO WPNS SEEN."

When the officers arrived at the hotel, they spoke to M.H. M.H. explained that he had interacted with Yusupov earlier in the evening and Yusupov appeared to be in some state of crisis or intoxication. M.H. described Yusupov as being "twitchy" and not observing personal space. According to M.H., after Yusupov checked in, he called the front desk twice that night: once to say that there was an "unknown person" in his room and again to say that there was an unknown child in his bed. M.H., along with the hotel emergency response team, went to Yusupov's room and found that the room was in a state of disarray. M.H. observed Yusupov destroying the inside of the room by flipping over the mattresses, cutting holes in the box springs, and otherwise damaging hotel property. M.H. eventually left the room and called 911. M.H. told the officers that Yusupov asked him to call police to assist; Yusupov claimed there was a small child in the room and he needed help. However, M.H. did not see a child in the room.

M.H. escorted the officers to Yusupov's room (#2933), which is on the 29th floor overlooking the 1900 block of Fifth Avenue in downtown Seattle. The door to the room was propped open by the locking bar. The officers pushed open the door and saw Yusupov standing inside. To make entry into the room, Officer Corcoran had to push past a mattress that was propped up against the door. Upon observing Yusupov, it appeared to Ofc. Corcoran that he was in a state of intoxication and/or crisis. Yusupov was sweating profusely and was extremely restless. Yusupov immediately told Ofc.

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 4

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Corcoran that there was a child in the room, underneath the mattress that was leaning against the door. Ofc. Corcoran explained that he would search for the child and provide any assistance that he could. He asked Yusupov to step outside the room and into the hallway, which Yusupov agreed to do. At that time, officers performed a frisk of Yusupov's person for officer safety and found no weapons. They asked Yusupov to sit down in the hallway, and he again complied with the request.

The officers observed that Yusupov continued to be extremely restless and was sweating profusely, wiping sweat from his brow so often that he apologized to the officers for sweating so much. Yusupov explained that he had not slept in three days (he later stated it had been two weeks since he slept). Yusupov said that he had been living in a newly constructed building and began hearing the footsteps of children on the ceiling and in the walls around him. Yusupov stated that he rented the hotel room at the Westin to get away from the sounds of children's footsteps and to get some sleep. However, he explained that when he checked into the room, there was a child in the room with him. According to Yusupov, this was distressful and was why he destroyed the room. Yusupov further explained that the child was the child of a man who did not like him, but did not offer additional details. Multiple times during the conversation with the officers, Yusupov said words to the effect, "Didn't you see that shadow?" as if to suggest the child had just walked by without the officers noticing. Yusupov also repeatedly asked the officers to look under the long side the mattress to make sure the child was not under it.

**B. Officers Discover a Firearm in Yusupov's Hotel Room.**

At this time, the officers had no reason to suspect any criminal activity, but they were concerned for Yusupov's well-being. Considering Yusupov's agitated state, his statements, and his overall behavior, the officers decided to take Yusupov to the hospital for a mental health evaluation under the Involuntary Treatment Act[1] (ITA). The officers

---

[1] Under the Involuntary Treatment Act (RCW 71.05.153), a law enforcement officer may take or cause a person to be taken into custody and immediately delivered to a psychiatric hospital or inpatient mental health treatment center for evaluation and treatment when the officer has reasonable cause to believe that such person is suffering from a

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  asked Yusupov whether he was on any medication.  Yusupov replied that he had
2  prescription medication in his hotel room for anxiety.  Based on the officers' training and
3  experience, they suspected that there may be other substances affecting Yusupov's
4  demeanor besides anxiety medication.  While some officers remained in the hallway with
5  Yusupov, other officers entered the hotel room to look for additional medications,
6  narcotics, or other hazardous materials that would help them and the hospital staff
7  understand the cause of Yusupov's agitated state.  The officers took these actions as part
8  of their community care function to assist Yusupov and his upcoming mental
9  health/medical evaluation.

10       While looking through the hotel room, Officer Rothwell found a bag containing a
11 few prescription medication bottles in Yusupov's name.  Officer Rothwell provided the
12 medications to the emergency medical services team that later arrived to transport
13 Yusupov to the hospital (as referenced below).

14       Officers also located Yusupov's Washington State driver's license and a loaded
15 firearm underneath a jacket in an open drawer inside an open closet.  The firearm was
16 later identified as a Polymer80 9mm caliber pistol with no serial number (commonly
17 referred to as privately manufactured "ghost gun").  Officers asked Yusupov about the
18 firearm.  He replied that he owned multiple firearms and was a competitive shooter.

19       The officers ran Yusupov's name over the SPD data channel.  At that point, they
20 learned he was the subject of a pending Domestic Violence Protection Order, making him
21 a prohibited person from possessing firearms.  The officers asked Yusupov about the
22 Protection Order, and he acknowledged that his Concealed Pistol License had been
23 revoked because his ex-wife obtained a court order against him.

24       The officers mistakenly believed that Yusupov's possession of a firearm was a
25 misdemeanor offense instead of a felony.  With that understanding, the officers elected

---

behavioral health disorder and presents an imminent likelihood of serious harm or is in imminent danger because of being gravely disabled.

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

not to arrest Yusupov for the offense, but rather to follow through with the mental health referral under the Involuntary Treatment Act.[2]

Officers called for emergency medical services and an American Medical Response (AMR) ambulance arrived. Ofc. Corcoran assisted in placing Yusupov on the gurney in the hallway of the hotel. Yusupov was compliant during this process. While being escorted down the hallway to the elevator, Yusupov expressed concern for the welfare of the child he believed was in the hotel room. Ofc. Corcoran explained to Yusupov that no one else saw a child in the room. Yusupov stated he understood. In the elevator, Yusupov mentioned he had been involved in some kind of "psychological warfare" during past military service. Yusupov was placed in the ambulance and was taken to Swedish Hospital in Seattle.[3]

### C. Officers Recover Firearms and Ammunition from Yusupov's Vehicle.

Ofc. Corcoran then returned to his patrol vehicle, which was parked in the valet area of the hotel. As he and his partner were beginning to drive away, the hotel valet flagged them down. The valet told the officers that he had parked Yusupov's car earlier that night and there were firearms inside of the vehicle. Ofc. Corcoran went with the valet to Yusupov's vehicle, a 2011 Range Rover. Ofc. Corcoran planned to further investigate by looking through the windows of the vehicle. However, as he approached the vehicle, the valet opened the rear passenger door of the car. The valet did this on his own without being asked by Ofc. Corcoran. At that point, Ofc. Corcoran observed multiple tactical style backpacks that appeared as though they could contain firearms. Ofc. Corcoran also saw a long object wrapped in a blanket sticking out of one of the backpacks. He recognized this item to be consistent with the barrel of a rifle.

---

[2] The SPD reports note that the officers intended to "refer the misdemeanor charge of Violation of a DV Protection Order to the court" at a later time.

[3] The SPD Crisis Unit later contacted the hospital and learned that Yusupov was briefly seen by staff and released after a short interview.

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 7

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Ofc. Corcoran staffed the matter with his Sargent, and they made the decision to seize the suspected firearms in order to ensure the safety of the community. The officers were concerned with leaving potentially dangerous items inside of a luxury vehicle parked in a publicly accessible garage in downtown Seattle. In particular, the officers were aware of the current high rate of vehicle prowls in the City of Seattle.

The officers entered the backseat area of the vehicle and seized three backpacks. The backpacks each contained multiple firearms, including rifles with collapsible stocks and handguns, as well as firearms magazines, ammunition, and other firearms accessories. The trunk of the vehicle also contained two long rifles. A subsequent inventory of the contents of Yusupov's vehicle identified the seized property as: an Aero Precision Model X15 5.56 NATO caliber rifle with serial number (S/N) X287680; a Ruger Model 5.7 5.7x28mm caliber pistol with S/N 641-25677; a Ruger Model 18029 Precision 6.5 Creedmoor/.308 Winchester caliber rifle with S/N 1803-29602; a Kel-Tec, Model Sub 2000 9x19mm caliber rifle with S/N FFTT02; an FMK Firearms Model AR-1 Extreme 5.56 NATO caliber rifle with S/N FMK45820; a North American Arms Corp. Derringer-type .22LR caliber revolver with S/N B37705; a Polymer80 9mm caliber pistol with no serial number ("ghost gun"); a silver skeletonized AR-15 type 5.56 NATO caliber pistol with no serial number ("ghost gun"); three fully loaded 5.56 NATO caliber Magpul rifle magazines; an empty .308 Winchester rifle magazine; an extended-capacity Glock magazine loaded with 20 live rounds; a bayonet; a machete; a 5.7mm caliber live round; five .22LR caliber live rounds; 90 live 5.56 NATO caliber rounds, including armor-piercing and hollow-point rounds; and 50+ live 9mm rounds (hollow point). Each of these firearms was in immaculate condition and contained several after-market upgrades, such as high-quality optics and other firearms accessories.

In addition, officers recovered from the vehicle badges containing Yusupov's name and photograph; documents relating to Yusupov's membership in a firearm enthusiast group; and documentation of Yusupov's proficiency with various weapons

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

platforms, including multiple handguns and rifles. Inside one of the backpacks, officers found a shopping list for firearms, food, and provisions one would need to withstand a prolonged siege or an extended standoff. Officers also recovered gloves; rope; a flashlight; and bandages.

### D. Officers Recover an Additional Firearm in Yusupov's Hotel Room.

After recovering the firearms from Yusupov's vehicle, Ofc. Corcoran and other officers decided to conduct a more thorough search of Yusupov's hotel room. The officers were aware that hotel staff would need to clean and prepare the room for other guests and were concerned that additional dangerous items may be in the room. The officers returned to the room and located another loaded handgun stuffed into the cushion of a chair. The firearm was a North American Arms Corp. Derringer .22 revolver.

### E. Yusupov is Prohibited from Possessing Firearms under Federal Law.

I have obtained and reviewed court records related to the Order for Protection issued in the matter of *Yasmeen Judeh vs. Rustam M. Yusupov*, in King County Superior Court case number 20-2-02283-7. The Order was issued on March 16, 2020, and was subsequently renewed by the entry of an Order on Renewal of Order for Protection on May 13, 2021. The renewed order is in effect until May 13, 2023.

The orders meet all the requirements set forth in 18 U.S.C. § 922(g)(8)(A)-(C), and therefore prohibit Yusupov from possessing a firearm under federal law. Specifically, the court documents establish that, as required by § 922(g)(8), Yusupov received actual notice of the hearings and was present at the hearings either in person (2020) or by telephone (2021); the Orders restrain Yusupov from harassing, threatening, and stalking Yasmeen Judeh, who was found by the court to be a "current or former cohabitant as intimate partner;" and the Orders prohibit the use and threatened use of physical harm and bodily injury against Judeh. The Orders also state that, during the pendency of the orders, Yusupov is prohibited from possessing firearms under both state and federal law.

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 9

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Along with the original Order for Protection, the court issued an Order to Surrender Weapons on March 16, 2020. This directed Yusupov to "immediately surrender" any firearms he possessed. Yusupov personally signed the Order to Surrender Weapons, acknowledging receipt of the Order. When the court renewed the Order for Protection, it also ordered Yusupov to surrender any firearms in his possession on or before May 19, 2021.

On May 18, 2021, a King County Sheriff's Office Deputy served Yusupov with a copy of the renewed Order for Protection. At that time, Yusupov told the Deputy that he had surrendered all his firearms in 2020 (in response to the original Order to Surrender Weapons) and no longer possessed any firearms.

**F. Interstate Nexus of the Seized Firearms.**

I am a certified Interstate Firearms and Ammunition Nexus Expert and have been trained in the recognition of firearms and ammunition and their origin of manufacture. I examined all the firearms discussed above and have determined that the following firearms were either not manufactured in the State of Washington or had been shipped in interstate commerce as part of their manufacturing process: FMK Firearms Model AR-1 Extreme 5.56 NATO caliber rifle; Aero Precision Model X15 5.56 NATO caliber rifle; Ruger Model 5.7 5.7x28mm caliber pistol; Ruger Model 18029 Precision 6.5mm Creedmoor/.308 Winchester caliber rifle; Kel-Tec Model Sub 2000 9x19mm caliber rifle; and North American Arms Corp. Derringer .22 revolver. In addition, all the above-listed firearms – plus the two seized Polymer80 9mm caliber pistols with no serial numbers and the skeletonized AR-15 5.56 NATO caliber pistol with no serial number ("ghost guns") – meet the definition of a firearm under Title 18, United States Code, Section 921(a)(3).

//
//
//
//

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **CONCLUSION**

Based on the foregoing, I respectfully submit that there is probable cause to believe that Rustam Yusupov committed the above-referenced offenses.

*[signature]*

Catherine Cole
Special Agent, ATF

The above agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the __6th__ day of April, 2022. Based on the Complaint and the sworn statement, the Court hereby finds that there is probable cause to believe the Defendant committed the offenses set forth in the Complaint.

*[signature]*

PAULA L. McCANDLIS
United States Magistrate Judge

*United States v. Yusupov*
USAO# 2022R00387
Complaint - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970